The Honorable Jamal N. Whitehead

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> DANGELO ROBERTS, <br><br> Defendant. | NO. CR24-122-JNW-002 <br><br> **UNITED STATES' SENTENCING MEMORANDUM** |

Defendant Dangelo Roberts is the most culpable defendant charged in this conspiracy because he recruited co-conspirators and disseminated the victims' personal information to commit the fraud. He knew that a bank insider stole this information and had no qualms about its repeated use. For his role as a leader and organizer of this scheme, the United States respectfully recommends that the Court impose the parties' agreed sentence of a total of 36 months in custody, to be followed by 3 years of supervised release, and that the Court order restitution in full of $345,014.51.[1]

---

[1] The parties have agreed that restitution should be "at least $146,068.91[.]" Dkt. 118 ¶ 12.

United States' Sentencing Memorandum - 1
*United States v. Dangelo Roberts*, CR24-122-JNW-002

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# I. BACKGROUND

## A. Offense Conduct

In 2022, co-defendant Aneicia Ford unlawfully accessed bank accounts and retained victims' personally identifiable information ("PII") while working as a customer service representative for the Victim Credit Union ("VCU"). Roberts and an uncharged co-conspirator disseminated the stolen PII amongst the members of the charged conspiracy, and that information was used: (i) to produce counterfeit identification cards in the victims' names but bearing photos of the co-conspirators, and (ii) to gain access to and conduct unauthorized transactions on the victims' VCU accounts. Once the co-conspirators successfully took over an account, they committed the fraud through actions such as: obtaining new debit cards in the victims' names; increasing ATM withdrawal limits and point-of-sale purchase limits; purchasing cashier's checks and money orders; and withdrawing cash.

Roberts used his Instagram and Facebook accounts to entice prospective members to join in the conspiracy, and, once they were willing, to give them detailed instructions on how to commit the fraud. Many of these posts were publicly accessible. For instance:

- Roberts recruited participants by posting images of: himself, victims' accounts with sizeable balances, and the lucrative proceeds of the fraud (*Figures 1-3*).



*Figure 1*: Facebook post of Roberts (Bates 7746)

United States' Sentencing Memorandum - 2
United States v. Dangelo Roberts, CR24-122-JNW-002

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



*Figure 2*: Instagram post of balance inquiry showing $358,613.37 available in victim G.P.'s account (Bates 9407)[2]



*Figure 3*: Instagram post of ATM withdrawal (Bates 9404)

- Roberts also advertised his ability to create or obtain fake IDs (*Figure 4*).



*Figure 4:* Instagram post of fake IDs (Bates 9416)[3]

---

[2] The white redactions are original to the post; the Government added the black redactions.

[3] The Government added the black redactions; the original post contained the victims' PII.

United States' Sentencing Memorandum - 3
*United States v. Dangelo Roberts*, CR24-122-JNW-002

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Buyers then contacted Roberts to purchase these fake IDs. For example, in Facebook messages, Roberts told a customer, "I can have it [the fake ID] done by tmr [. . .] I'll get started on it tonite". Bates 7583-7585. In another Instagram exchange, when asked how much a fake ID would cost, Roberts responded, "I want a facial , let's exchange services n I got yu". Bates 7558-7559.

- In his communications with co-conspirators using social media, Roberts also explained how to take a photograph for the fake ID and sent sample headshots to imitate. In one instance, he rejected the proposed photograph because it "Need[ed] a little more light". Bates 8176-8177, 8184-8188.

- Roberts also sent co-conspirators instructions on how to execute the account takeovers at a VCU branch, as seen in the following messages he sent to three different Facebook account users:
    - "Al u gotta do is walk n ask for a new card they gon make u a hard one and den u raise withdrawal limit to 10,000 [. . .] All they do is ask for social and mothers maiden name [. . .] I got all tht and more" (Bates 7587);
    - "U just gotta slide in there n get a new card [. . .] Act like da person [. . .] N den raise ya withdrawal limit [. . .] Den go to atm n pull it out" (Bates 7620-7621); and
    - "I got the account already it's has money n everything in it I jus make u a id as if u the person wit the account and u. Go in bank and b like I need a new card I lost mines and they make it right in front of u [. . .] Den we go to atm n get all da bread off [. . .] I got all da information all tht [. . .] I do this everyday [. . .] Real simple n ez" (Bates 7624-7625).

- Roberts also understood the payment structure for those he recruited, explaining in Facebook messages to an uncharged co-conspirator that she would receive "Half of W[h]atever" the proceeds from the fraudulent transaction were. Bates 8173.

- Finally, Roberts reassured co-conspirators that the victims' information was accurate because it came from a bank employee: In his words, "I got mf tht work at bank tht throw me accounts". Bates 7598.

United States' Sentencing Memorandum - 4
*United States v. Dangelo Roberts*, CR24-122-JNW-002

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Roberts participated in the charged conspiracy over the course of approximately five months and was paid for his efforts. He did not personally conduct the account takeovers but supplied others—including co-defendants Kohrey Lee Bridges, Anthony McQueen, and Meghan Frazier—with the tools to do so and accompanied many of them to the VCU branches.[4] In particular, on August 16, 2022, Roberts gave Bridges a fake ID that Bridges used to take over victim T.L.'s VCU account and subsequently conduct unauthorized transactions on that account. Moreover, Roberts' phone records show calls made to or received from co-defendant Shanna Carter-Zanders. Bates 7322-7323; 7327-7328; 7334.

The overall conspiracy caused $345,014.51 in actual losses to the VCU.

B.   **Procedural History**

On July 17, 2024, the defendant was charged by indictment with Conspiracy to Commit Bank Fraud in violation of 18 U.S.C. §§ 1344 & 1349 (Count 1); Bank Fraud in violation of 18 U.S.C. §§ 1344 & 2 (Counts 5 & 7); and Aggravated Identity Theft in violation of 18 U.S.C. §§ 1028A(a)(1) & 2 (Counts 11 & 13). Dkt. 1. On May 30, 2025, the defendant pleaded guilty to the conspiracy offense and one count of Aggravated Identity Theft. Dkt. 118. He has remained at liberty on bond largely without incident[5] since his arrest on July 26, 2024.

C.   **Criminal History**

The defendant has no criminal history.

//
//

---

[4] *See, e.g.*, Dkt. 118 ¶ 8(d) (Roberts); Dkt. 73 ¶ 8(g) (Bridges); Dkt. 170 ¶ 8(c) (McQueen); Dkt. 91 ¶ 8(c) (Frazier).

[5] On May 20, 2025, the Government learned from the Probation Office that Mr. Roberts had contacted a co-defendant using social media. The Government requested that Probation notify Mr. Roberts and his defense attorney of this incident, and that Mr. Roberts be reminded that he was to have no contact with any co-defendants per the terms of his appearance bond.

United States' Sentencing Memorandum - 5
*United States v. Dangelo Roberts*, CR24-122-JNW-002

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## II. SENTENCING GUIDELINES CALCULATIONS

The United States maintains its objections to the Sentencing Guidelines calculations in the PSR and submits that: (i) the loss amount should be the actual loss in this case, or $345,014.51; (ii) for similar reasons, the defendant should be ordered pay $345,014.51 in restitution; and (iii) the defendant should receive an Aggravating Role adjustment and thus does not qualify as a Zero-Point Offender.

### A. Loss Amount

The Court should apply a 12-point enhancement under U.S.S.G. § 2B1.1(b)(1)(G) because Roberts knowingly participated in a conspiracy that resulted in more than $250,000 (and less than $550,000) in actual losses.

The Court may determine the § 2B1.1 loss amount adjustment using the actual loss, which is defined as "the reasonably foreseeable pecuniary harm that resulted from the offense." *See* U.S.S.G. § 2B1.1(b)(1)(C)(i). In this case, because Roberts pleaded guilty to a conspiracy offense, he is responsible for the foreseeable actions of his co-conspirators in furtherance of that conspiracy. *See, e.g.*, *United States v. Henry*, 984 F.3d 1343, 1355 (9th Cir. 2021) (citing *Pinkerton v. United States*, 328 U.S. 640, 645-48 (1946)); *United States v. Wells*, 804 F. App'x 515, 518 (9th Cir. 2020) (emphasis added) (defendant who pleaded guilty to conspiracy to commit bank fraud may "be held liable for the entire loss amount reasonably foreseeable within the scope of his conspiratorial agreement, and *not just for his criminal activity*").[6] Roberts need not have "full knowledge of all the details of the unlawful scheme or the names, identities, or locations of all of the other members." Ninth Circuit Criminal Model Jury Instruction 11.4; *accord*

---

[6] The Probation Office ignores the implications of *Pinkerton* liability here. *See* Probation's Response to Government's First Objection to PSR (emphasis added) ("[A]lthough Mr. Roberts was aware of how his co-defendants would be using the PII he helped them obtain for fraudulent purposes, *he was not personally involved in each act of fraud committed by those co-defendants*. As such, those acts should not be considered under relevant conduct.").

United States' Sentencing Memorandum - 6
*United States v. Dangelo Roberts*, CR24-122-JNW-002

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*id.* Instruction 11.1 (one can join in a conspiracy even "without full knowledge of all the details of the conspiracy").

Roberts specifically admitted in his plea agreement that the scope of the conspiratorial agreement in this case is broader than just the $146,068.91 in fraudulent transactions for which he seeks to be held accountable. According to the plea agreement, Roberts:

- "agreed with Bridges, McQueen, Frazier, *and other co-conspirators* that ROBERTS would supply them with [PII], fake identification cards, and/or financial instruments in order for the co-conspirators to impersonate VCU members and commit fraud on and using their accounts";
- "understood that the VCU members' PII and account information had been (or would be) unlawfully obtained by an employee of the VCU at the time" (i.e., co-defendant Aneicia Ford); and
- "disseminated *the PII originating from Ford* to other co-conspirators (including Bridges, McQueen, and Frazier, *among others*)."

Dkt. 118 ¶¶ 8(d)-(e) (emphasis added). Those admissions are the "evidence to support [that] he intended to cause losses beyond" the $146,068.91 figure and capture the full actual loss amount. *See* Defense Response to Government's First Objection to PSR. As a result, Roberts should be held responsible for all of the losses stemming from PII that he knew a bank insider, Ford, was stealing, and that he was in turn distributing to other co-conspirators.

The Probation Office's and the defense's calculation incorrectly cabins the scope of the overarching conspiracy. Indeed, the $146,068.91 figure is limited to the instances where Roberts was captured on bank surveillance in the vicinity of his co-conspirators while they accessed the victims' accounts. *See* Bates 10154. Using $146,068.91 as the loss amount is illogical because that number does not even encompass all the fraud that Roberts' admitted co-conspirators—co-defendants Bridges, McQueen, and Frazier—

United States' Sentencing Memorandum - 7
*United States v. Dangelo Roberts*, CR24-122-JNW-002

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

committed. *See* Dkt. 118 ¶ 8(c) ("Co-defendants Kohrey Lee Bridges, Anthony McQueen, and Meghan Frazier were associates of ROBERTS."). The loss amount attributable to Roberts must—at a minimum—include the entirety of those three co-defendants' fraud, as well as the fraud Roberts acknowledges he committed with an uncharged co-conspirator, as summarized below:

| *Defendant* | *Actual Loss Amount* |
|---|---|
| Roberts | $7,500.00[7] |
| Bridges | $112,578.68 |
| McQueen | $66,395.22 |
| Frazier | $23,505.01 |
| TOTAL | $209,978.91 |

Bates 10154; Dkt. 118 ¶ 12.

Moreover, the evidence of multiple phone contacts between Roberts and Carter-Zanders supports Roberts' awareness that she was a co-conspirator. The Government cannot conceive of an innocent explanation for their communications, which took place within the same timeframe as the charged conspiracy. Thus, to the extent the Court does not apply the actual loss ($345,014.51) as the loss amount, the Court should hold Roberts accountable for the $209,978.91 figure calculated above plus the additional $105,030.60 in actual losses Carter-Zanders caused, or $315,009.51, which is also above the $250,000 threshold for purposes of 2B1.1(b)(1). *See* Bates 10154.

### B.  Restitution Amount

The same principles of co-conspirator liability render Roberts responsible for paying the full amount of actual losses in restitution.[8] "Where a defendant is convicted of

---

[7] This amount excludes the losses that are already reflected in Bridges', McQueen's, and Frazier's actual loss amounts. *See* Bates 10154.

[8] If ordered by the Court, Roberts would be jointly and severally liable for the $345,014.51 in restitution with co-defendant Aneicia Ford, who has already agreed to that amount in restitution. *See* Dkt. 109 ¶ 13.

United States' Sentencing Memorandum - 8
*United States v. Dangelo Roberts*, CR24-122-JNW-002

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

conspiracy, the Mandatory Victims Restitution Act (MVRA) authorizes a district court to hold the defendant jointly and severally liable, *see* 18 U.S.C. § 3664(h), 'for *all* [victims] harmed by the *entire* scheme,'" *United States v. Dadyan*, 76 F.4th 955, 958 (9th Cir. 2023) (emphasis and brackets in original) (quoting *United States v. Riley*, 335 F.3d 919, 931 (9th Cir. 2003)) (affirming district court's decision to hold co-conspirators jointly and severally liable for "the full amount of loss that the entire conspiracy caused"). Although this approach is not mandatory, *Dadyan*, 76 F.4th at 958 n.5, it would be appropriate to order Roberts to pay full restitution in light of the critical leadership and organizational roles he played in achieving the conspiracy's success, as described further below.

### C.  Aggravating Role Adjustment and Zero-Point Offender Reduction

The Court should apply a four-level upward adjustment because Roberts was "an organizer or leader of a criminal activity that involved five or more participants[.]" U.S.S.G. § 3B1.1(a).

Roberts' roles in the conspiracy meet many of the factors to be considered for this enhancement.  *See* U.S.S.G. § 3B1.1 cmt. 4.  His participation involved: recruiting other co-conspirators to conduct the account takeovers over social media; personally making[9] or procuring the counterfeit identification cards; distributing those cards and the victims' PII to co-conspirators who would impersonate those victims; instructing the co-conspirators on how to commit the fraud (for instance, that they should take photos for the fake IDs in a certain way, or that they should obtain a new debit card for the account and raise withdrawal limits); and accompanying co-conspirators to the VCU to conduct the fraudulent transactions.  All of these actions entailed substantial planning and organization.  Roberts was responsible for keeping track of a wealth of information,

---

[9] *See, e.g.*, Bates 7624-7625 (emphasis added) ("*I jus make u a id* as if u the person wit the account [. . . .]"); Bates 7583-7585 (emphasis added) ("I can have it [the fake ID] done by tmr [. . .] *I'll get started on it tonite*").

United States' Sentencing Memorandum - 9
*United States v. Dangelo Roberts*, CR24-122-JNW-002

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

including: which co-conspirator was impersonating which victim; the creation of the correct fake ID and the use of corresponding PII for each individual victim; whether the co-conspirator could plausibly impersonate the victim (for instance, that no red flags would be raised with discrepancies such as age or profession); and the balance of each victim's account so it would not be overdrawn. That Roberts witnessed or was in the vicinity of fraudulent transactions such as ATM withdrawals is also evidence of his leadership role and authority: His presence would have helped to ensure that there would be no hiccups with the account takeovers and that the co-conspirators would not steal any of the funds withdrawn. *See* U.S.S.G § 3B1.1 cmt. 2 (observing the adjustment even applies to a defendant "who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization").

Moreover, the charged conspiracy involved five or more participants: at a minimum, Roberts' five co-defendants and at least one uncharged co-conspirator. *See* Bates 8176-8177, 8184-8188.

Finally, although Roberts may not have been the originator of the fraudulent scheme, that does not foreclose the application of the adjustment at issue. "There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy." U.S.S.G. § 3B1.1 cmt. 4. In contrast to his co-defendants, Roberts undeniably coordinated the use of the victims' stolen PII. That he gave his co-conspirators "instructions on what to do next" cements his supervisory position: like the interns supervised by junior associates in the defense's analogy, the co-conspirators receiving Roberts' instructions would have reported back to him with any issues or concerns. *See* Defense Response to Government's Second Objection to PSR.

Roberts' Guidelines calculation should reflect his aggravating role and, if applied, the § 3B1.1 adjustment would preclude him from eligibility for the Zero-Point Offender reduction. *See* U.S.S.G. § 4C1.1(a)(10).

United States' Sentencing Memorandum - 10
*United States v. Dangelo Roberts*, CR24-122-JNW-002

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

### D.     Guidelines Range

The applicable Guidelines provisions are:

| Item | Guideline | Offense Level/Adjustment |
|---|---|---|
| Base Offense Level | § 2B1.1(a)(1) | 7 |
| Loss Amount Exceeding $250,000 but Less Than $550,000 | § 2B1.1(b)(1)(G) | +12 |
| 10+ Victims | § 2B1.1(b)(2)(A)(i) | +2 |
| Aggravating Role | § 3B1.1(a) | +4 |
| Acceptance of Responsibility | § 3E1.1 | -3 |
|  | TOTAL | 22 |

With a criminal history category of I and a total offense level of 22, the resulting advisory Guidelines range is 41 to 51 months, plus the consecutive 2-year mandatory minimum.

## III.    THE 3553(a) FACTORS SUPPORT THE RECOMMENDED SENTENCE

An analysis of the relevant sentencing factors in this case supports the parties' joint recommendation of a total of 36 months in custody.

First, as to the nature and circumstances of the offense, the defendant helped coordinate and execute this fraudulent scheme for months. Committing this brazen fraud was routine for Roberts: In his words, "I do this everyday." Bates 7624-7625. Roberts recruited potential co-conspirators, instructed them on how to access the victims' funds, and reassured them that the fraud was 'easy' and that the PII came from a bank insider. VCU surveillance captured him nearby account takeovers occurring in numerous locations, including Kent, Federal Way, Renton, Seattle, and Silverdale. Bates 10154. The cumulative impact of Roberts' deliberate conduct caused almost $350,000 in actual losses to the VCU, money that the financial institution cannot use now for daily operations or investments. Roberts' use and dissemination of victims' PII further

United States' Sentencing Memorandum - 11
United States v. Dangelo Roberts, CR24-122-JNW-002

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

compromised the integrity of the VCU's business and caused the bank to lose business when at least one victim closed their accounts. A significant custodial sentence is warranted to underscore Roberts' flagrant disregard for the law and the victims' personal information.

Second, the defendant's history and characteristics are predominantly mitigating and support the substantially below-Guidelines recommendation. Roberts youth, impoverished and turbulent upbringing, early exposure to controlled substances, and mental health concerns undoubtedly contributed to his poor decision-making. These adverse circumstances may also have made him more susceptible to recruitment to participate in this scheme. Roberts' limited intellectual abilities (*see* PSR ¶ 81), however, are difficult to square against the evidence of numerous tasks he single-handedly undertook in furtherance of the conspiracy. Nonetheless, the parties' recommendation fully accounts for the myriad hardships Roberts has suffered and the fact that this is his first criminal conviction.

Third, a sentence of 36 months' imprisonment and 3 years of supervision would advance the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2). Roberts' repeated use and distribution of victim PII that he knew a bank employee stole was egregious, and justifies the imposition of a sentence that is more than a few months north of the mandatory minimum. The proposed sentence would impress upon Roberts and the public the seriousness of these offenses, promote respect for the law, and deter similar criminal conduct, especially because fraud crimes like those Roberts and his co-conspirators committed often have low barriers to entry. PII is readily accessible to others, both through lawful and unlawful means. Significant consequences are warranted to dispel the notion that stealing money from someone else's bank account is a minor offense or one that, given the volume of fraudulent transactions, will not be prosecuted. Moreover, an extended period of supervision will help Roberts stay on a law-abiding track and enable him to access any counseling or treatment services he may need.

United States' Sentencing Memorandum - 12
*United States v. Dangelo Roberts*, CR24-122-JNW-002

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Finally, as to the avoidance of unwarranted sentence disparities, the JSIN data for similarly situated defendants (with a total offense level of 22 and a criminal history category of I) shows an average length of imprisonment of 33 months and a median length of imprisonment of 35 months, excluding the mandatory minimum applicable to this case. The total sentence proposed by the parties is within range of these figures and reflects the mitigating factors present in Roberts' case.

Additionally, Roberts, Aneicia Ford, and Anthony McQueen are the only defendants who pleaded guilty to one count of Aggravated Identity Theft, which carries a mandatory minimum, and their cases are therefore distinguishable from that of their co-defendants. *See* Dkts. 109, 118, 170. McQueen's case is further distinguishable from Roberts' case because the Government estimates McQueen to be in criminal history category VI. As to Ford, her plea agreement provides that the Government's recommendation cannot exceed a total term of 36 months. Dkt. 109 ¶ 12. In comparison to Ford, the Government ultimately views Roberts to be more culpable due to his recruitment efforts as well as his sustained use and distribution of the stolen PII.

//
//
//

United States' Sentencing Memorandum - 13
*United States v. Dangelo Roberts*, CR24-122-JNW-002

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## IV. CONCLUSION

For the foregoing reasons, the United States respectfully recommends that the Court sentence Roberts to 36 months in custody and a 3-year term of supervised release, and order restitution in the amount of $345,014.51.

DATED this 30th day of October, 2025.

Respectfully submitted,

CHARLES NEIL FLOYD
United States Attorney

*s/ Jessica M. Ly*
JESSICA M. LY
Special Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: 206-553-4311
Fax: 206-553-0882
Email: Jessica.Ly@usdoj.gov

United States' Sentencing Memorandum - 14
*United States v. Dangelo Roberts*, CR24-122-JNW-002

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970