THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> DANGELO ROBERTS, <br><br> Defendant. | No. CR24-122-JNW <br><br> DEFENSE SENTENCING MEMORANDUM |

D'Angelo Roberts, through counsel, presents this sentencing memorandum in support of the joint sentencing recommendation of 36 months in custody. Mr. Roberts pled guilty to one count of Aggravated Identity Theft and one count of Conspiracy to Commit Bank Fraud. Because the Identity Theft count requires a 24-month commitment to be served separate from any other sentence, the sentencing recommendation is formulated on Mr. Roberts serving 24 months for the Aggravated Identity Theft and 12 months for the Bank Fraud conspiracy.

I.   BACKGROUND

Mr. Roberts is before this Court facing his very first criminal conviction. He is 23 years old and has never spent any time in custody other than the one day he spent following his arrest on July 26, 2024. After being released on an appearance bond that same day, Mr. Roberts has been in full compliance with all conditions of his release. For over one year since his indictment, Mr. Roberts has demonstrated that he can be

DEFENSE SENTENCING MEMORANDUM
(*United States v. Roberts*, CR24-122-JNW) - 1

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, WA 98101
(206) 553-1100

trusted to follow all court orders and to not commit any further law violations. Additionally, he has kept himself busy by staying employed while at the same time seeking the benefits of mental health counseling.

Moreover, Mr. Roberts' participation in the conspiracy ended long before his arrest in July of 2024. As mentioned in "the offense conduct" section of the pre-sentence report, Mr. Roberts' involvement in the conspiracy began around May of 2022 when he was 19 years old. Starting at this time, Mr. Roberts received personal identifier information that originated from co-defendant Aneicia Ford who worked at a credit union and had access to customer information. As a 19-year-old, Mr. Roberts certainly was not the person who created the scheme to steal identities from credit union customers. Instead, at this impressionable age, he was recruited by others to participate where he admittedly supplied other participants with fake identification cards to access victim-customer accounts. Mr. Roberts further admitted that he helped other participants to conduct account takeovers that resulted in $146,068.91 in losses that are attributable to Mr. Roberts' offense conduct. Accordingly, Mr. Roberts agrees that he is jointly and severally responsible for that amount in restitution.

That said, it appears that Mr. Roberts' involvement in the conspiracy ended sometime in October of 2022, at the young age of 20. Afterward, there is no sign that he ever returned to criminal activity. Instead, Mr. Roberts was able to find employment at various places where he could earn enough income to support himself.

In addition to maintaining employment, Mr. Roberts also endeavored to take care of his mental health. Looking back at his youth, it becomes clear that he has suffered from traumatic experiences that led to the development of post-traumatic stress disorder. Exhibit 1 (SEALED). At an early age, starting at age 11, Mr. Roberts began using controlled substances to manage his stress. While he never believed he became an

DEFENSE SENTENCING MEMORANDUM
(*United States v. Roberts*, CR24-122-JNW) - 2

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, WA 98101
(206) 553-1100

addict or chemically dependent, it is still sad to know that starting in elementary school he felt the need to "self-medicate" with alcohol, marijuana, and ecstasy.

Mr. Roberts has never participated in treatment and has never opened up to others about his prior drug use. One explanation might be that Mr. Roberts has a difficult time expressing his feelings to others. As noted in the pre-sentence report, Mr. Roberts' intellectual and cognitive functioning remains very low. Therefore, it makes sense that Mr. Roberts struggles to communicate his personal challenges with others in a meaningful way. Instead, he became used to keeping those challenges private for most of his life until recently when he decided that he needed professional help. Exhibit 1.

What seems encouraging from this is that Mr. Roberts embraces the need for professional help to address his mental health. He also remains positive notwithstanding the fact that he is prepared to serve three years in prison should the Court follow the recommendation of the parties. With his lack of criminal history, coupled with this being a non-violent offense, Mr. Roberts hopes that he will benefit from programming at the Bureau of Prisons with the goal of receiving favorable First Step Act Credits. He will be in his mid-twenties when he is released. With that Mr. Roberts still has a whole life to live. He knows that to be successful, he will not only need to maintain gainful employment to support himself, but he will also need to focus on mental health treatment. Judging from how well he has done on pre-trial services release, we should all feel confident that he will be equally successful once he is placed on supervised release.

II. **THE UNITED STATES SENTENCING GUIDELINES**

The defense agrees with Probation's calculations of the Sentencing Guidelines for Conspiracy to Commit Bank Fraud. With a total offense level of 12 and a criminal history category of I, Mr. Roberts' advisory guideline range for that offense is 10–16

DEFENSE SENTENCING MEMORANDUM
(*United States v. Roberts*, CR24-122-JNW) - 3

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, WA 98101
(206) 553-1100

months, falling within Zone C of the Sentencing Table. See USSG §5C1.1(d). Because Mr. Roberts also pled guilty to Aggravated Identity Theft, he must serve 24 months separately.

The defense also anticipates that the government will disagree with Probation's guideline calculations. In particular, the government will likely maintain its position that the loss amount should be higher, that Mr. Roberts deserves a leadership role adjustment, and that he should not qualify for the Zero-Point Offender reduction. *See PSR addendum summarizing "Objections."* The defense maintains and stands by its responses to the government's objections, as summarized in the pre-sentence report's addendum. For those same reasons presented in the addendum, this Court should reject the government's calculations.

### III.    THE SECTION 3553(A) FACTORS

#### A.    The Nature and Circumstances of the Offense

The nature and circumstances of the offense reveal a rather large conspiracy of charged and uncharged participants. Uncharged participants include those who brought Mr. Roberts into the scheme. At the age of 19, when his offense conduct began, he was among the youngest members of the conspiracy. Clearly, he was not the mastermind nor was he the one who crafted the plan to steal the identities of credit union members. Instead, his role was to coordinate with others to use the personal identifier information to tap into the accounts of the credit union members and make unauthorized cash withdrawals. To be clear, Mr. Roberts did not keep the full $146,068.91 that he is jointly and severally responsible for paying back as restitution. While he admittedly profited from the scheme, he only kept a fraction of that amount for himself since that amount had to be split up among other participants, including those who were never arrested.

DEFENSE SENTENCING MEMORANDUM
(*United States v. Roberts*, CR24-122-JNW) - 4

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, WA 98101
(206) 553-1100

Should the Court agree with the sentencing guideline calculations of both the defense and probation, the record would support only one aggravating adjustment under the Guidelines—specifically the adjustment for the offense involving at least ten victims. Other than the one adjustment for the number of victims, there are no other aggravating adjustments under the Guidelines.

There is no debate that financial crimes are generally motivated by financial gain. This case fits within that generalization. Clearly, Mr. Roberts joined the conspiracy and engaged in the offense conduct for financial gain. And because of that poor choice, he is now stuck with a six-figure financial debt that must be paid after he serves no less than 24 months in prison due to the mandatory minimum. That said, something significant changed for Mr. Roberts in October of 2022 because that is when his offense conduct stopped. This is not a case with the offense conduct ending because of an arrest. In fact, Mr. Roberts was not arrested until July 2024—almost two years later. After October 2022, Mr. Roberts, on his own volition, was no longer involving himself in criminal activities. Instead, he sought legitimate employment working at fast food restaurants and at various warehouse jobs. In all, Mr. Roberts has been living a law-obeying lifestyle without engaging in any new criminal activities for the past three years.

**B.     The Personal History and Characteristics of Mr. Roberts.**

The instant conviction represents an aberration of Mr. Roberts' character. Growing up as the second oldest child of six siblings in a single parent household meant that he was tasked to carry on family responsibilities starting at a young age. Without a father figure in his life, or any other role model for that matter, Mr. Roberts did whatever possible to help his mother through incredibly difficult and challenging times. At an early age, instead of fostering friendships and growing roots in a stable community, Mr. Roberts and his family moved around frequently due to financial stress

DEFENSE SENTENCING MEMORANDUM
(*United States v. Roberts*, CR24-122-JNW) - 5

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, WA 98101
(206) 553-1100

and hardships. If not living in a crammed apartment, the family would live temporarily with relatives or friends if they were lucky. When not so lucky to find someone to live with, Mr. Roberts and his family resorted to homeless shelters until they could find somewhere to live.

In addition, Mr. Roberts faced struggles with his schooling due to cognitive delays. While never formally tested or diagnosed while in grade school, it seems likely that had Mr. Roberts been screened, he would have been diagnosed with a learning disability. That said, school was challenging for Mr. Roberts and while his mother often suggested that he drop out of school and focus more on a trade, Mr. Roberts insisted on graduating from high school with a diploma. And that alone speaks volumes about his character.

If life wasn't challenging enough for Mr. Roberts, he also faced abuse as a child as described and discussed in Exhibit 1 and in the presentence report. His untreated mental health challenges grew into a force that undoubtedly clouded his judgment and led him to make irresponsible decisions. The most prominent being the poor choice to participate in the instant conspiracy. Fortunately, Mr. Roberts did have enough good judgment to walk away from criminal behavior in October 2022 and has never returned to that way of life.

During October 2022, Mr. Roberts was a victim of a shooting while attending a Halloween party. He was shot in the leg and this experience surely contributed to his growing anxiety, particularly since he knew friends and others who had been killed by gunfire. Adding to the trauma, it was only one year later when Mr. Roberts nearly lost his life after being shot in the neck and spine as he was sitting in the front passenger seat of a car in Lakewood. While he was not the intended target, Mr. Roberts nevertheless was a victim of this drive-by shooting that nearly killed him and landed him in the emergency room.

DEFENSE SENTENCING MEMORANDUM
(*United States v. Roberts*, CR24-122-JNW) - 6

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, WA 98101
(206) 553-1100

Ever since these events, Mr. Roberts has been battling anxiety, post-traumatic stress disorder, and depression. Mr. Roberts would often turn to alcohol or marijuana to ease his mental pain. While he was employed for the most part throughout this period, he found himself changing jobs frequently and at one point was let go after one year of working as a security guard because of multiple absences. He soon realized self-medicating would not solve his problems; instead, he needed professional intervention for things to change for the better.

Since his arrest, Mr. Roberts has focused on his mental health, on sobriety, and above all maintaining a positive attitude as he prepares for imprisonment. He has demonstrated his trustworthiness by remaining in full compliance with each condition of his appearance bond. Additionally, he has stayed away from drugs and alcohol and has done his best to maintain steady employment. What helps him maintain such a positive attitude is knowing that he has tremendous support from family and friends who still love him unconditionally. Exhibit 2 (Letters of Support). That is what will help him emotionally to get through the next period of his life while in custody.

### C.   Punishment, Deterrence, and the Need for Effective Treatment

The instant offense involves three significant layers of punishment. The first being that Mr. Roberts will now be labeled as a convicted felon. Unfortunately, federal convictions remain with the person forever, absent a presidential pardon. They do not "wash-out" from one's criminal history record after a certain period of time, unlike comparable Washington state convictions. The sad reality is that this "convicted felon" stigma often puts many people at a significant disadvantage when it comes to finding employment, housing, or even obtaining a loan.

The second layer of punishment of course is incarceration. Mr. Roberts has never been confined before, other than for the one day when he was arrested and processed for this case. However, he was immediately released on an appearance bond,

DEFENSE SENTENCING MEMORANDUM
(*United States v. Roberts*, CR24-122-JNW) - 7

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, WA 98101
(206) 553-1100

so he has never experienced confinement at a jail or prison. Now, he will be designated to a BOP facility where he will be confined for no less than two years.

The final layer of punishment is the restitution debt that stretches to $146,068.91. For a 23-year-old young man, this is a serious debt to carry and likely will be a challenge for Mr. Roberts for years if not decades.

That said, Mr. Roberts appreciates that he caused these outcomes by making the poor and unfortunate choice to participate in the criminal conspiracy. He has accepted full responsibility for his offense conduct knowing that he would pay a heavy price in the end. While he cannot do anything about his past mistakes, he knows that he can certainly learn from them to ensure moving forward he never engages in any behavior that puts him at risk of getting arrested. So far, at least since October 2022, he has proven that he can achieve that goal.

Finally, Mr. Roberts is amenable to treatment. He continues to express an eagerness for treatment, particularly with a focus on managing his mental health needs. As such, he has no opposition to special conditions that require treatment assessments followed by adhering to all treatment recommendations. Hopefully as a zero-point offender of a non-violent financial crime, Mr. Roberts will be designated to a minimum-security facility that will help him start this process. Accordingly, Mr. Roberts respectfully asks this Court to incorporate a recommendation in the judgment to serve his commitment at the minimum-security satellite camp at FCI Sheridan.

IV.    CONCLUSION

For these reasons, and as further presented at the sentencing hearing, the defense respectfully recommends a sentence of 12 months for Count 1 and 24 months for Count

//

DEFENSE SENTENCING MEMORANDUM
(*United States v. Roberts*, CR24-122-JNW) - 8

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, WA 98101
(206) 553-1100

11 for a total of 36 months, all in accordance with the sentencing recommendations set forth in the plea agreement.

DATED this 30th day of October 2025.

Respectfully submitted,

s/ *Jesse Cantor*
Assistant Federal Public Defender
Attorney for D'angelo Roberts

DEFENSE SENTENCING MEMORANDUM
(*United States v. Roberts*, CR24-122-JNW) - 9

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**